No. 21-1049

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

TRANSPORTATION DIVISION OF THE INTERNATIONAL ASSOCIATION OF SHEET METAL, AIR, RAIL AND TRANSPORTATION WORKERS, et al.

Petitioners,

v.

FEDERAL RAILROAD ADMINISTRATION, et al.,

Respondents.

On Petition For Review From The Federal Railroad Administration

## UNION PETITIONERS' REPLY BRIEF

LAWRENCE M. MANN
Alper & Mann, P.C.
9205 Redwood Avenue
Bethesda, MD 20817
(202) 298-9191
mann.larrym@gmail.com

KEVIN C. BRODAR
General Counsel, SMART-TD
24950 Country Club Blvd., Ste. 340
North Olmsted, OH 44070
(216) 228-9400
kbrodar@smart-union.org

JOSHUA D. MCINERNEY,
General Counsel, BLET
Wentz, McInerney, Peifer & Petroff, LLC
3311 Bear Pointe Cir.
Powell, OH 43065
Tel: (614) 756-5566
jmcinerney@lawforlabor.com

Attorneys for Petitioners the Transportation Division of the International Association of Sheet Metal, Air, Rail, and Transportation Workers; and the Brotherhood of Locomotive Engineers and Trainmen

ii

# TABLE OF CONTENTS

**Page(s)**

TABLE OF CONTENTS ................................................................................. iii

TABLE OF AUTHORITIES ............................................................................iv

    I. SUMMARY OF ARGUMENT ................................................................ 1

    II. ARGUMENT ........................................................................................... 1

        A.  FRA's Failure to Afford Petitioners an Opportunity to File a Petition for Reconsideration is Arbitrary, Capricious, and Contrary to Law .............. 1

        B.  FRA Failed to Comply with 49 U.S.C. §103(c). ..................................... 4

    III. CONCLUSION ....................................................................................... 7

Certificate of Compliance with Rule 32(a) ........................................................ 9

Certificate of Service ....................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*American Rocky Mountaineer – Petition for Exemption from 49 U.S.C. Subtitle IV*, FD No. 36468 (STB served May 28, 2021) ............................................... 7

**Statutes**

49 U.S.C. § 103 ................................................................................................ 1, 3, 4, 5

49 U.S.C. § 20103 ...................................................................................................... 1

**Regulations**

14 C.F.R. § 13.234 ..................................................................................................... 2

46 C.F.R. § 201.173 ................................................................................................... 2

46 C.F.R. § 601.34 ..................................................................................................... 2

49 C.F.R. § 107.211 ................................................................................................... 2

49 C.F.R. § 190.243 ................................................................................................... 2

49 C.F.R. § 202.5 ....................................................................................................... 2

49 C.F.R. § 190.335 ................................................................................................... 2

49 C.F.R. § 211.13 ..................................................................................................... 1

49 C.F.R. §211.29 ...................................................................................................... 2

49 C.F.R. § 389.35 ..................................................................................................... 2

49 C.F.R. § 553.35 ..................................................................................................... 2

85 Fed. Reg. 80544 .................................................................................................... 4

# I. SUMMARY OF ARGUMENT

As demonstrated in Petitioners the Transportation Division of the International Association of Sheet Metal, Air, Rail, and Transportation Workers ("SMART-TD") and the Brotherhood of Locomotive Engineers and Trainmen's ("BLET") (hereinafter collectively referred to as "Petitioners" or "the Unions") Opening Brief and below, the Federal Railroad Administration's ("FRA") final rule on brake tests was issued in violation of 49 U.S.C.§§ 103 (c) and 20103(b), and 49 C.F.R. § 211.13. Indeed, by making the final rule effective upon its publication, the parties were effectively foreclosed from filing a petition for reconsideration. In addition, by relaxing and reducing the regulatory requirements, the rulemaking its arbitrary and capricious in that it violates the FRA's statutory duty to place safety as the highest priority. As a result, the rule should therefore be vacated.

# II. ARGUMENT

### A. FRA's Failure to Afford Petitioners an Opportunity to File a Petition for Reconsideration is Arbitrary, Capricious, and Contrary to Law.

As an initial matter, the FRA minimizes the importance of the Petitioners being afforded the opportunity to seek a Petition for Reconsideration. Section 553(e) of the Administrative Procedures Act ("APA") states: "Each agency shall give an interested person the right to petition for the issuance, amendment,

or repeal of a rule."[1] Even though the FRA has a similar requirement, by making the rule effective immediately, it prohibited Petitioners from utilizing the regulation in the present case. The FRA suggests that "petitioners could have sought reconsideration within 60 days of the rule's publication or asked for relief from the regulation's timing requirements under its good cause exception." (FRA Br. at 18). However, that is a not an accurate statement of the regulation. The petition for reconsideration must be "submitted not later than 60 days after publication of the rule in the Federal Register, <u>**or** 10 days prior to the effective date of the rule, whichever is earlier</u>." 49 C.F.R. §211.29 (Add. 66) (emphasis added). That was not possible here due to the FRA's actions.

Moreover, Petitioners do not suggest that there are situations in which promulgating a regulation on the date of issuance is not valid. The intervenor Association of American Railroads ("AAR") argues that promulgating a regulation on the date of issuance does not violate the FRA Petition for Reconsideration regulation, citing to three rulemakings where FRA adopted

---

[1] Such petitions are sometimes referred to as 553(e) petitions, petitions for rulemaking, petitions for reconsideration, administrative petitions, or citizens' petitions. Moreover, all federal agencies, including the DOT's modal administrations, allow such petitions on pending rulemakings. *See, e.g.,* 14 C.F.R. § 13.234; 49 C.F.R. § 389.35; 49 C.F.R. § 190.243; 49 C.F.R. § 553.35; 49 C.F.R. § 202.5; 46 C.F.R. § 201.173; 46 C.F.R. § 601.34; 49 C.F.R. § 190.335; 49 C.F.R. § 107.211.

such a regulation. (AAR Br. at 13-16). During a rulemaking, the FRA can readily determine if there is opposition to a pending rule. If so, time for seeking reconsideration should be allowed. The prior administration adopted those cited rules involving subjects in which there was no opposition. As a result, the possible violation of the FRA's reconsideration regulation has not been litigated. Furthermore, a petitioner should not be forced to rely upon FRA's determination of good cause in cases where there exists significant opposition, as was the case here.

Thus, the only logical conclusion for FRA's actions in making the rule effective immediately (which was two years in the making) was to game the system in an attempt to bar any reconsideration of a regulation that lessens safety. Had Petitioners been provided the opportunity to file a petition for reconsideration, some or all of the alleged errors alleged in this appeal might have been eliminated. The FRA was simply manipulating the procedures to shield questionable regulations from review. Now, the FRA's action will require this Court to get involved to determine if each of the requirements in the 12 dockets, which were amended, comply with 49 U.S.C. §103(c).

The FRA additionally contends that Petitioners were not prevented from, filing a petition for reconsideration based upon good cause. (FRA Br. at 44-45). However, there was no legal basis for a "good cause" petition.

The FRA's failure to allow Petitioners the opportunity to file a Petition for Reconsideration is arbitrary, capricious, and contrary to law, and must be set aside.

### B. FRA Failed to Comply with 49 U.S.C. §103(c).

FRA has an absolute obligation to comply with 49 U.S.C. §103(c), which requires FRA to utilize the highest degree of safety in issuing regulations. Indeed, that section states, in pertinent part:

> In carrying out its duties, the Administration shall consider the assignment and maintenance of safety as the highest priority, recognizing the clear intent, encouragement, and dedication of Congress to the furtherance of the highest degree of safety in railroad transportation.

*Id.* (emphasis added). The mandate of this section requires the FRA to apply and provide for the "highest" degree of safety. Not what they may think might be somewhat safe, or even safe, but what is the *highest degree* of safety. Despite that mandatory requirement, the FRA did not address §103(c) in its rulemaking, and the record is clear that FRA failed to comply with it. Each of the 12 dockets affected by the Final Rule have been addressed by Petitioners in their Opening Brief.

Of particular significance is that the rulemaking was initially undertaken on the basis of the Petition of the AAR to "*relax* the requirement to conduct a Class I brake test…." 85 Fed. Reg. 80544 (Dec. 11, 2020) (emphasis

added). Unfortunately, that is precisely what the FRA did in the rulemaking under review. While the FRA contends that Petitioners did not demonstrate that the FRA failed to consider safety as the highest priority (FRA Br. at 17-18), it should be noted that the FRA only believes that it needs to "consider" the assignment and maintenance of safety in its rulemakings in order to comply with §103(c) and the APA. This completely ignores the enumerated Congressional intent that the FRA must recognize the emphasis placed on safety above all else. 49 U.S.C. §103(c). Indeed, the FRA's duty is far more explicit than the Respondents admit here, and the statutory language completely undermines the FRA's decision to weigh factors such as cost/benefit analyses higher than safety.

  FRA additionally claims that "petitioners offer no argument as to how FRA failed to consider 'safety as the highest priority'" (FRA Br. 20), ignoring Petitioners entire substantive arguments which describe how the FRA rulemaking under review did not meet the Congressional intent. The FRA's various responses and excuses to the contrary have no basis. For example, with regard to extended haul trains, Respondents allege in part that "petitioners did not object to either of these amendments during the rulemaking process." *Id.* at 24. This is demonstrably false. *See* FRA-2018-0093-0014 (TWU Comments) at 6-7; FRA-2018-0093-0016 (ATDA/BLET/BRC/SMART–TD Comments) at 6-

5

7.

With respect to increasing the permissible air flow limit from 60 CFM to 90 CFM, Respondents contend that the Unions "misunderstand the math" by pointing out that this is the equivalent to a 7½ PSI leak per minute. This is so, they claim, because the 90 CFM "represents the total acceptable *cumulative* leakage when *multiple air sources are used*, not the leakage from a single source … ." FRA Br. at 30.  However, when air flow meters for brake systems (or FRA's preferred "air flow method indicator" term) cannot be or are not used, any leakage is strictly limited to 5 PSI per minute. The FRA regulation exceeds its own strict standard in these circumstances. The use of AFM in a train with a given number of air sources does not objectively add more air to the brake pipe than the amount of air in a non-AFM train with the same number of air sources.

Respondents' logic in defending the FRA's elimination of the 368-day calibration requirement for end-of-train device telemetry equipment similarly misses the mark. Respondents state that FRA "explained that technological developments had rendered a 368-day calibration requirement for most devices unnecessary." *Id.* at 35. As the Unions previously demonstrated, however, FRA did not only eliminate the requirement for the devices with the technological improvements, it also eliminated the requirement for the *legacy* equipment to

which the "technological developments" have not been—and will not be—applied. *See* Petitioners' Brief at 22. This equipment cannot be operated in a safe manner using a standard for equipment with advanced technology.

Finally, to the extent that Respondents appear to question Petitioners' standing to challenge the aspect of the finale rule applicable solely to tourist, scenic, historic, and excursion railroads and their employees (FRA Br. at 42, n.6), such ignores that Petitioners do in fact represent operating employees on at least some of these railroads, and that these railroads run on Class I trackage. *See., e.g., American Rocky Mountaineer – Petition for Exemption from 49 U.S.C. Subtitle IV*, FD No. 36468 (STB served May 28, 2021) (granting American Rocky Mountaineer's request to operate passenger rail service over Union Pacific trackage).

### III.　CONCLUSION

Based on the foregoing, and for the reasons set forth in Petitioners' Opening Brief, the FRA's rule should be vacated.

Date:　January 18, 2022

Respectfully submitted,

/s/ Kevin C. Brodar
Kevin C. Brodar
General Counsel
SMART-TD
24950 Country Club Blvd., Ste. 340
North Olmsted, OH 44070
Tel: (216) 228-9400
Fax: (216) 228-0937
kbrodar@smart-union.org
*Attorney for SMART-TD*

Joshua D. McInerney
WENTZ, MCINERNEY, PEIFER &
PETROFF, LLC
3311 Bear Pointe Cir.
Powell, OH 43065
Tel: (614) 756-5566
jmcinerney@lawforlabor.com
*Attorney for BLET*

Lawrence M. Mann
Alper & Mann, P.C.
9205 Redwood Avenue
Bethesda, MD 20817
(202) 298-9191
mann.larrym@gmail.com
*Attorney for SMART-TD and BLET*

## CERTIFICATE OF COMPLIANCE WITH RULE 32(A)

This brief complies with the type-volume limitations of Fed. R. App. P.32(a)(7)(B) and word limit of Cir. R. 32-1 because this brief contains 1,521 words, excluding part of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typestyle requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in fourteen-point Times New Roman.

/s/ Kevin C. Brodar
Kevin C. Brodar

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of January, 2022, I electronically filed the foregoing Union Appellants' Reply Brief with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ Kevin C. Brodar
Kevin C. Brodar